IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**EDUARDO LAMAS LEYVA**                                           **PLAINTIFF**

v.                                 **CASE NO. 5:18-cv-05091**

**SERGEANT GARY LUNSFORD,**
**Washington County Detention Center**                         **DEFENDANT**

## MEMORANDUM OPINION

This is a civil rights action filed *pro se* by Plaintiff Eduardo Lamas Leyva under 42 U.S.C. § 1983. Currently before the Court is a Motion for Summary Judgment filed by Defendant, Sergeant Gary Lunsford ("Sergeant Lunsford"). (Doc. 28). Plaintiff has not filed a response, and the time to do so has passed. The Court finds this matter ripe for consideration.

## I. BACKGROUND

Plaintiff filed his complaint on May 25, 2018. (Doc. 1). His application to proceed *in forma pauperis* was granted the same day. (Doc. 4). Plaintiff is currently incarcerated in the Washington County Detention Center ("WCDC") awaiting trial on pending criminal charges. (Doc. 9, p. 3).

Plaintiff alleges Sergeant Lunsford denied him medical care on February 28, 2018, when he refused to allow Plaintiff "to speak with a medical provider at the jail due to my broke cranium from a car wreck." (Doc. 1, p. 4). Plaintiff claims Sergeant Lunsford "told me to go drink water and lay down. I have medical records proving this and ever since I have been still in pain and lack of vision and my concentration has been off." *Id.* Plaintiff initially sued Sergeant Lunsford in his individual and official capacities seeking

1

compensatory damages. On June 7, 2018, the Court entered a screening order pursuant to 28 U.S.C. § 1915A dismissing the official capacity claims. (Doc. 7).

On January 17, 2019, Sergeant Lunsford filed the instant Motion for Summary Judgment arguing: (1) there was no personal involvement of Sergeant Lunsford; (2) Plaintiff failed to exhaust the administrative remedies available to him; (3) there was no deliberate indifference to Plaintiff's medical needs; (4) negligence is not a constitutional violation; and (5) Sergeant Lunsford is entitled to qualified immunity. Although Plaintiff did not file a response to the motion, his complaint was verified; therefore, Plaintiff's allegations will be considered accordingly.

## II. UNDISPUTED FACTS

Plaintiff was arrested and booked into the custody of the WCDC on February 2, 2018. During the booking process, Plaintiff informed WCDC staff that he had medical issues and complaints relating to his "head" and that he was taking "pain meds" for this condition. (Doc. 30-2, pp. 1-8). The next day, Plaintiff filed a request for medical services and asked to be added to the sick call list. He was added to the list that same day. (Doc. 30-3, p. 5).

On February 7, 2018, Plaintiff indicated he no longer needed medication. The WCDC medical staff responded stating they would have a provider review his request and cancel it. *Id.* at 6. The following day, Plaintiff reported issues with his "broken head" and was placed on the sick call list for review by a medical provider. On February 10, 2018, he was evaluated by medical staff and found to be "more concerned with getting killed if he goes back to Mexico . . . mild distress, nose and head injury were from 2 years ago." Plaintiff indicated he did not want to be on medications at that time. (Doc. 30-4, p. 27).

2

On February 12, 2018, Plaintiff was again seen by medical staff. Plaintiff asked for a second blanket and expressed concern about being returned to Mexico. *Id.* at 24-27. His request for a second blanket was approved and, at his request, he was given a journal to write down his feelings rather than being treated with medications. *Id.* at 24.

On February 21, 2018, Plaintiff filed a request to medical services asking, "I would like to know how it works here, if you feel bad, . . . I have to be dying to make a case."[1] The following day, medical staff responded: "You have to see the nurse, they will put you on the list tomorrow . . . If you have a medical complaint, inform us. We have been helping you as much as possible. Our doctor did not think you were in immediate trouble with your medical needs. Your doctor visit for your head was in 2005." (Doc. 30-3, p. 8).

On the evening of February 21, 2018, Plaintiff was using the kiosk after lights out, and an officer instructed him to get off the kiosk and go to his bunk. Plaintiff remained at the kiosk and was issued a citation for failure to follow verbal orders of staff. The report was approved by Sergeant Lunsford on February 24, 2018. (Doc. 30-5, pp. 1-4). In response to the citation, on February 26, 2018, Plaintiff wrote:

> I write this letter to tell my story about the events that took place on 01/21/2018 at 23:49. My head was hurting and I asked for a pain pill or another blanket to calm my head pain and I refused all kinds of help for this reason. I wrote in the kiosk as I send some complaints because they are charging for medical charity and do not give me adequate medication and every time is greater my medical expenses because doctors and nurses come to supposedly see me and it is pure farce probably not even that up I owe and do not receive the right medication. The officer or guard on duty that day at night spoke Spanish and knew what I said because I speak in English and Spanish. I have problems with witnesses.

---

[1] Most of Plaintiff's medical requests and grievances were submitted in Spanish. The record reflects that WCDC staff and the medical providers responded to Plaintiff's communications in Spanish. In this opinion, the Court is quoting the language submitted in English by Defendant Lunsford in his Statement of Facts. (Doc. 30).

3

*Id.* at 3.

The hearing officer found Plaintiff was not guilty of failure to obey verbal orders of the staff because he was instructed to put his medical needs on the kiosk. *Id.* at 4.

Plaintiff saw medical staff again on February 22, 2018, concerning pain and sensitivity to hot and cold that he associated with his prior head injury. His vitals were taken, and he continued to indicate he did not want to "take a lot of medicine." He was given naproxen for comfort. (Doc. 30-4, pp. 22-23). The following day, Plaintiff's medical records from Northwest Medical Center relating to his head injury were requested by medical staff. The most recent records provided were dated August 22, 2005, when Plaintiff went to the emergency room for headache and dizziness. *Id.* at 1-14.

On February 28, 2018, at 6:24 a.m., Plaintiff submitted the following medical request:

> I want to ask to be taken to the hospital because I have been feeling bad. I have had dizziness and headaches. I am always asking a specialist not to learn a nurse because the people who have seen me till now only charge can not take seriously the other people's pain, they only come and charge and they are not useful at all I hope and it would be the person who reads this. May god bless you.

(Doc. 30-3, p. 11).

Medical staff responded at 9:23 a.m., instructing Plaintiff to "[p]lace your request on the provider list so that a doctor can share your concerns. We will see it as soon as possible." *Id.* At 2:28 p.m., Plaintiff sent a request to medical staff stating, "I'm feeling bad. I have dizziness. I have a very strong headache. I checked with a specialist and I received adequate medication." At 3:08 p.m., medical staff responded, "Okay, I[']ll put it on the list about headache and dizziness..." *Id.* at 12. That evening at 9:48 p.m., Plaintiff sent a request to medical staff saying he was sending the request again because he had

4

felt dizzy all day. At 10:39 p.m., medical staff responded informing Plaintiff he was going to be put on the list to see the doctor. *Id.* at 165.

On March 1, 2018, at 6:39 a.m., Plaintiff sent a request to medical staff stating:

> I think that the sick woman I repeat that I do not know what her name is since they have seen me is a farce I do not receive medicine or attention and only my debt increases every time I have felt worse I feel dizzy, I have pain head and I want to pump too I felt the high price last night they checked me and I was high and the nurse did not know anything.

*Id.* at 14.

At 7:36 a.m., medical staff responded telling him he was "on the list for the doctor to see today, not a nurse." *Id.* Plaintiff was seen that day at med call for his complaint of headaches. The provider noted:

> Pt. complaints of chronic headaches. He had a head injury in 2005. He has had no continual follow up. Intermittently he has seen physicians in Mexico. Pt. states he needs his headache medications but cannot provide medication name, provider, or place in which it was prescribed.

(Doc. 30-4, pp. 18-19).

On October 9, 2018, Plaintiff was deposed with the assistance of a translator at the WCDC. Plaintiff testified he has the on-going medical problem of a broken skull. He stated when he was working, a wall fell on his head and "smooshed my head." He said it had been "years" but could not say when it occurred. (Doc. 30-7, p. 8). Plaintiff stated he only gets his ibuprofen two times a day at the WCDC, and he believes that "it's the negligence that exists here." *Id.* at 9.

When asked if he was only suing Sergeant Lunsford in this case, Plaintiff responded "He's the one that's in charge, isn't he?" *Id.* at 13. Plaintiff testified the basis of his complaint was "negligence" because "he was ignoring me." *Id.* Plaintiff acknowledged that Sergeant Lunsford did not prescribe medication, but "he could have

5

called the doctor for me and he didn't." *Id.* at 14. Plaintiff also stated he had seen the doctor several times at the WCDC, "but they don't do anything." *Id.*

When asked if Sergeant Lunsford "told you to lay down and drink water on February the 28th?", he replied, "to go lay down and drink water . . . and to relax." Plaintiff testified after that, he went to the kiosk and wrote a note." *Id.* at 15. When asked, "how did you feel after you went and drank water and laid down?" Plaintiff stated, "[T]ruthfully it was him making fun of me. That's how I saw it; the officer that was telling me to do that." *Id.* at 16. Then Plaintiff stated, "and I don't think it was Lunsford that told me that. It was another one, one that has glasses . . . I don't know if he did that to me under Sgt. Lunsford's orders." *Id.*

Since January 1, 2016, Dr. Robert Karas has been the WCDC's medical doctor and Karas Correctional Health has provided all medical care pursuant to a contract with Washington County. (Doc. 30-1, p. 3). All decisions regarding medications, medical testing, or medical treatment are left to the professional medical judgment of the physician at the detention facility. No employee of WCDC is authorized to make non-emergency medical decisions on behalf of any inmate. *Id.*

### III. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts,

6

by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## IV. DISCUSSION

Plaintiff alleges Sergeant Lunsford denied him medical care on February 28, 2018, when he ignored Plaintiff's complaints about headaches and dizziness. Sergeant Lunsford argues he is entitled to summary judgment because he was never involved in Plaintiff's medical care and did not speak with him on February 28, 2018.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his claim, Plaintiff must prove Sergeant Lunsford acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes

"both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

Deliberate indifference may be demonstrated by prison officials who intentionally deny or delay access to medical care. *Estelle,* 429 U.S. at 105. However, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). Thus, "each Government official-defendant, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677.

Other than Plaintiff's sparse allegations in his Complaint, there is nothing in the summary judgment record to demonstrate that Sergeant Lunsford was personally involved in Plaintiff's medical care at the WCDC or that he had any direct responsibility for any alleged delay in the care Plaintiff was provided. In fact, Plaintiff's own testimony during his deposition reveals it was someone else who allegedly told Plaintiff to go lay down and drink water when he complained of a headache and dizziness on February 28, 2018. (Doc. 30-7, p. 16-17).

In addition, Sergeant Lunsford submitted an affidavit stating he "did not speak to Plaintiff regarding any medical need," "did not deny Plaintiff any access to medical assistance," and "was not consulted in regard to any medical need expressed by the Plaintiff." (Doc. 32-1). He also states he was not aware of Plaintiff's medical complaints

made on February 28, 2018 until he was served with this lawsuit. *Id.* Plaintiff has not provided any evidence to dispute Sergeant Lunsford's affidavit.

Accordingly, Plaintiff's claim for denial of medical care fails as a matter of law, and Sergeant Lunsford is entitled to summary judgment.

### V. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (Doc. 28) is **GRANTED**. Plaintiff's claims against Defendant Sergeant Gary Lunsford are hereby **DISMISSED WITH PREJUDICE**.[2] A judgment of even date consistent with this opinion shall issue.

**IT IS SO ORDERED** this 11th day of April, 2019.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

[2] Because there are no violations of Plaintiff's constitutional rights, it is not necessary for the Court to address the issue of qualified immunity.